[Civ. Nos. 19730-19733, 19834.   Second Dist., Div. Two.
May 2, 1956.]

JUDITH KELLY HOWARD, Respondent, v. LINDSAY
COLEMAN HOWARD, Appellant.

[Five Cases.]

Franklin W. Peck for Appellant.

Edward M. Raskin for Respondent.

ASHBURN, J.—Five appeals presented in a single set of briefs require disposition herein. They challenge six orders made after interlocutory judgment of divorce in favor of plaintiff wife, granted on the ground of habitual intemperance and cruelty. Each of the orders awards to plaintiff an attorney fee to enable her to resist an appeal taken by defendant.

The interlocutory judgment was entered on June 9, 1952. It awarded plaintiff, among other things, alimony in the sum of $1,750 a month. On July 3, 1952, defendant appealed from the entire judgment. An amended notice of July 23, 1952, narrowed the scope of the appeal somewhat but it

challenged, as had the original, the alimony award of $1,750 per month. Defendant effected a stay of execution through giving appropriate bond. Plaintiff also filed a notice of appeal from certain portions of the judgment on July 31, 1952.

Being without funds to prosecute her own appeal or to resist defendant's attack upon the judgment, plaintiff made a motion for an order awarding her alimony during the pendency of the appeal and for an attorney fee to enable her to carry on that phase of the litigation. Pursuant thereto an order was made on September 5, 1952, allowing plaintiff $1,750 a month as alimony pending the appeal, together with an attorney fee of $250 for presenting the motion in the superior court. Defendant appealed on that same day, September 5th, from both phases of the order (No. 19730) and gave bond to stay execution.

On September 23, the other phase of the motion was decided, the court awarding a $10,000 attorney fee for services upon the appeals from the judgment. Defendant appealed from that order (No. 19732) and stayed execution.

Her first motion having proved a barren victory, plaintiff again applied on September 23 for alimony pending appeal from the September 5 order and an attorney fee for presenting that motion. The court thereupon ordered payment of $1,750 a month as alimony and an attorney fee of $250 for presenting the motion. This order was made on September 23d and on the next day, the 24th, defendant appealed from the entire order (No. 19731) and stayed execution.

The second order having produced no money, a third motion for the same relief was made, resulting in an order of October 6th awarding alimony of $1,750 a month pending appeal and an attorney fee of $500 for presenting that motion. On October 14th defendant again appealed from the entire order and gave bond to stay execution (No. 19733).

It being necessary to defend the appeal from the order of September 5th (for $1,750 alimony and $250 attorney fee, No. 19730), and plaintiff still being without funds for litigation with her husband (whom the trial judge found to be worth four million dollars), she applied for an award of an attorney fee to enable her to resist the last mentioned appeal. On October 3d the count ordered defendant to pay to her an attorney fee of $1,000 for the defense of that appeal (No. 19730). Promptly defendant took another appeal on the same day, and gave bond to stay execution (No. 19834).

In order to defend the appeal from the order of September 23d awarding $1,750 alimony and $250 attorney fees, another application for an attorney fee on appeal was made and granted on October 10th in the sum of $1,000. Defendant appealed on October 14th (No. 19834) and stayed execution.

On the same day on which he took the last mentioned appeal counsel for defendant dismissed without prejudice his appeal from that portion of each of the orders of September 5th and September 23d which awarded plaintiff $1,750 monthly alimony pending appeal, thus leaving intact the appeal from the $250 attorney fee award in each instance. This reduced the appeals in Nos. 19730 and 19731 to a defense of the two attorney fee orders of $250 each. The fees awarded for that defense stood at $1,000 each. (Appeal No. 19834 covers both of those orders.) Thereupon counsel for defendant on November 28, 1952, filed in the superior court a total abandonment of the appeal (No. 19834) challenging both of those $1,000 orders, which abandonment was expressly "without prejudice." Then defendant moved the superior court to vacate said $1,000 allowances upon the ground that, his appeal from the $1,750 alimony award having been abandoned, "said attorney for plaintiff will not be called upon in the future to render or perform the legal services for which said attorney's fees were allowed." The motion was denied on November 28th. Defendant did not appeal from that order but promptly renewed his appeal from the $1,000 orders of October 3 and 10, this by notice filed on December 1, 1952. Of course he again stayed execution.

APPEAL No. 19732. ATTORNEY FEE OF $10,000

Appellant argues that this fee, designed to enable the wife adequately to prosecute her own appeal and resist that of her husband, is excessive to the point of an abuse of discretion.

The hearing was held on September 23, 1952. It was stipulated that the court consider all evidence received at the trial as well as that which had been heard on the application of September 5th for alimony pending appeal. There was also an examination by opposing counsel of plaintiff's attorney, Mr. Raskin, as a witness. Plaintiff and her attorney had presented affidavits, but defendant filed none and called no witnesses. Counsel for defendant made these statements near the close of the hearing: "I am aware of the fact that your Honor, in his sound discretion, should award Mr. Raskin a fee. We don't question that for a minute. . . . One thing further; Mr. Raskin is a very able lawyer. I don't dispute

that. He did a first class job for his client when he tried this case. Mrs. Howard was ably represented. By the questions I put to Mr. Raskin I did not mean to imply or even suggest that he is not a man of great ability, because he is. . . . Your Honor, in his own experience as a member of the bar and as a Judge sitting in this court, is personally capable of formulating a fair determination of how much Mr. Raskin is entitled to. Mr. Raskin makes point of the fact that we didn't file a counter affidavit here in response to his affidavit or to the affidavit of Mrs. Howard. There isn't any need to file an affidavit in response to the affidavit of Mrs. Howard because your Honor is familiar with all the facts and her financial condition. . . . [Y]our Honor is perfectly capable of determining what a fair fee should be in the absence of a counter affidavit. We are perfectly willing to confide this matter to the sound judgment of the court, but I suggest in conclusion that to make a fee of $30,000 or any substantial part thereof for prosecuting this appeal would be an abuse of the court's discretion." The court remarked: "In this case we have had a pendente lite order plus an award at the time of trial. Of course, there are going to be numerous issues and complications on appeal. I think the defendant has clearly indicated by his posting of bonds and his appeal from a subsequent order pending appeal that his resistance is going to be thorough and uncompromising, which he has a right to do," and ordered payment of a $10,000 fee.

Certain elementary considerations are generally recognized in these matters. ■ The wife is not required to expend her principal in litigating divorce matters with her husband. (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 417 [170 P.2d 670].) ■ The right to attorney fees on appeal does not depend upon the outcome of the same. (*Weil* v. *Weil*, 37 Cal.2d 770, 790 [236 P.2d 159].) Appellant's good faith is the essence of the right (*Weil* v. *Weil, supra,* at p. 790.) ■ The making of the award carries an implied finding that the appeal presents substantial questions and is being pursued in good faith. (*Gay* v. *Gay*, 146 Cal. 237, 240-241 [79 P. 885].) It "is common knowledge that legal charges are far from being standardized." (*Newbauer* v. *Newbauer*, 95 Cal. App.2d 36, 40 [212 P.2d 240].) "Obviously, the factors involved differ in each case. Certainly, neither the trial nor appellate courts should attempt to fix a flat fee identical in all cases. Such an approach would be unrealistic, unsound, and unjustified." (*Pope* v. *Pope*, 107 Cal.App.2d 537, 540

[237 P.2d 312].)   ██   The judge's experience and knowledge afford sufficient basis for fixing the amount of the lawyer's fee even in the absence of specific evidence on the subject.   (*Jones* v. *Jones*, 135 Cal.App.2d 52, 64 [286 P.2d 908]; *Lewis & Queen* v. *S. Edmondson & Sons*, 113 Cal. App.2d 705, 708 [248 P.2d 973]; *Libby* v. *Kipp*, 87 Cal.App. 538, 544 [262 P. 68].)   In the last cited case it is said: "It is perhaps difficult to conceive of any record that could be presented to the appellate court which would give less light upon the subject to be determined than a transcript relating to the fees or compensation that should be awarded for professional services, for the simple reason that only a few pages of testimony or a few simple statements contained in the record may be necessary to state the proceedings taken and had so far as the court records are concerned, whereas the time required to ascertain and determine the proceedings that should be taken or the skill required to determine the proper proceedings to be taken are the real elements which enter into the value of the services for which compensation is properly awarded, cannot be placed upon, and never do appear on a typewritten or printed age.   It is for this reason that the matter of awarding compensation for professional services, when that service is rendered by an attorney, is left, to so great a degree, in the judicial discretion of the trial court, so much so that unless the sum allowed is plainly and palpably exorbitant and such as shocks the conscience of an appellate court, the determination of the trial court will not be disturbed."

██   Matters properly taken into consideration by the trial judge are thus enumerated in *Pope* v. *Pope, supra*, 107 Cal.App.2d 537, 539: "In determining the amount of a reasonable fee the trial court is permitted to consider various factors:   The nature of the litigation, its complexity, the nature and extent of the contest, the amount involved, the financial circumstances of the parties, the skill required, the professional standing and reputation of the husband's attorneys and of the attorneys selected by the wife, are some of the relevant matters to be considered.   [Citing cases.]   The trial court is not required to disregard entirely the financial status of the husband and his ability to pay in fixing the amount of fees.   [Citing cases.]   ██   Where the husband possesses great wealth he has the ability to secure the services of able counsel.   The allowance to the wife must give her the power to hire counsel of equal standing in order to

equalize the contest, and to protect her rights." ■ The award thus reached cannot be set aside in the absence of a clear abuse of discretion. On the former appeal of this case, 128 Cal.App.2d 188, this court said at page 190 [275 P.2d 93]: "Abuse of discretion is never presumed. It must be affirmatively established. A reviewing court is not authorized to revise the lower court's judgment even if it should be of the opinion that it would have made a different award had the matter been submitted to its judgment in the first instance, in the absence of a clear abuse of discretion." In *Newbauer* v. *Newbauer, supra*, 95 Cal.App.2d 36, 40, the court put it thus: "The discretion was the trial judge's, not ours; and we can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did."

■ The interlocutory judgment of divorce was affirmed by this division of this court in two opinions found at pages 180 [275 P.2d 88] and 188 [275 P.2d 93] of 128 Cal.App.2d. In approving an attorney fee of $15,690, allowed on account of services in the trial of the case, it was pointed out that the clerk's transcript consisted of 685 pages, reporter's transcript 1394 pages, that there were 94 exhibits, numerous depositions and "innumerable applications and proceedings" prior to trial, that there were nine days of court proceedings prior to trial and eleven days of trial. After those rulings were made, petitions for rehearing and answers thereto, petitions for hearing in the Supreme Court and answers thereto, swelled the volume of briefs and petitions to 451 pages. With all these voluminous documents Mrs. Howard's attorney had to be familiar, and a general recollection of the same would not suffice for advancing or resisting points on appeal. Meticulous care in finding and citing transcript references and in discovering and presenting apt authorities was necessary to a workmanlike job. The briefs of the wife's attorney reflected that type of care on his part. The questions presented were not frivolous and their presentation was not unduly elaborate. The foregoing statement is based upon a reexamination of the record of the prior appeals.

Counsel for appellant argues, however, that the award was necessarily an approximation of the reasonable value of prospective services, that the issues on appeal were considerably narrowed after the amount of the fee was fixed, and therefore the sum of $10,000 now represents more than adequate compensation for services actually required of the wife's attor-

ney. At page 39 of appellant's opening brief counsel says: "It is submitted that although the $10,000.00 fee awarded on September 23, 1952 (Appeal No. 19732) may not, in view of the elaborate showing made by plaintiff, have constituted an abuse of discretion in the first instance, it should, in view of the limited matters which were actually submitted to this Court for determination, be substantially reduced."

Although defendant's original appeal challenged the entire judgment, his amended notice of July 23, 1952, attacked eight specific portions thereof, including the award of permanent alimony of $1,750 a month, the award to plaintiff of the furnishings at 1230 Benedict Canyon Drive, Beverly Hills, and the furnishings at 1134 San Ysidro Drive, Beverly Hills, also certain other personal property at 1230 Benedict Canyon Drive and a 1947 Buick automobile. As to all of the items just enumerated the appeal was ultimately abandoned through statements made in defendant's opening brief which was filed on February 16, 1954. The amended notice of appeal also enumerated as erroneous rulings the award to the wife of the real property known as 1134 San Ysidro Drive, the award of an attorney fee for trial services in the sum of $15,690, and certain cost items aggregating $5,349.45. The items last enumerated are those which were argued in this court. It is to be noted that there was no receding from the attack on the alimony award until the brief was filed on February 16, 1954, and that is also true of the abandonment of the other items just mentioned. The reason for ceasing to contest the alimony appears from a quotation of appellant's reply brief, later set forth herein. With respect to the other matters, counsel in the same brief, after concluding that the problem of demonstrating the alimony to be excessive was "virtually insuperable," said this: "This is also true of the furniture, furnishings and household effects in the Benedict Canyon home and in the house located on the San Ysidro property, all of which was awarded to plaintiff. A very large amount of the furniture and furnishings was acquired by inheritance by defendant from the estate of his deceased mother. Again defendant generously gave plaintiff carte blanche in having the furniture and furnishings refurbished, recovered and otherwise altered, concerning which the trial court made specific findings. It would be humanly impossible, in the absence of an extended reference, to conclusively trace all of the furniture and furnishings which defendant acquired from the estate of his deceased mother. This is likewise

true of a large number of articles of personal property belonging to defendant acquired by gift or inheritance, which did not constitute an integral part of the Benedict Canyon home." It thus appears that the narrowing of plaintiff's appeal did not substantially reduce the necessary labors of the wife's attorney.

Plaintiff's notice of appeal at all times challenged the ruling that certain valuable jewelry which she claimed had been given to her by her husband belonged to him, the finding that a certain ranch known as the Moorpark Ranch belonged to the husband except a certain "undefined and unsubstantial interest . . . of an indefinite if not nominal value" which was held to be community property and awarded to the husband. Plaintiff also complained of that portion of the custody award which permitted defendant to have the two children for certain limited periods of time, general custody being in the plaintiff. It appears that these appeals involved property of a valuation of several hundred thousand dollars. Plaintiff's attorney computes it at one million, two hundred thousand dollars, which sum includes alimony at the rate of $1,750 a month for the full life expectancy of plaintiff. This figure is doubtless much too high, but it remains a fact that the subject matter of the two appeals was worth several hundred thousand dollars. The questions presented were adequately briefed and were by no means frivolous.

Though it is appropriate for the trial court (*Warner* v. *Warner,* 34 Cal.2d 838, 841 [215 P.2d 20] ; *Barker* v. *Barker,* 139 Cal.App.2d 206 [235 P.2d 85]), or an appellate tribunal (*Bancroft* v. *Bancroft,* 9 Cal.App.2d 464, 473 [50 P.2d 465] ; *Nelson* v. *Nelson,* 96 Cal.App.2d 210, 212 [215 P.2d 48]), to reduce an attorney fee allowed in advance of rendition of services when subsequent events show the same to be excessive, that does not appear to be the case at bar. An award of $10,000 if made after the conclusion of both appeals would have been the exercise of a reasonable discretion. It should not be forgotten that the intrinsic value of the dollar has substantially decreased in recent years. (See *Kircher* v. *Atchison T. & S. F. Ry. Co.,* 32 Cal.2d 176, 187 [195 P.2d 427] ; *Autry* v. *Republic Productions, Inc.,* 30 Cal.2d 144, 154 [180 P.2d 888].) We cannot disturb the order in question.

APPEALS NOS. 19730, 19731 AND 19733. ATTORNEY
FEE AWARDS OF $250, $250 AND $500

Each of these appeals initially attacked an award of $1,750 alimony pending appeal and a modest attorney fee for pres-

entation of the particular motion in the trial court. These appeals were frivolous in their inception and remain so to date. The quality of the assault upon the alimony award is revealed by appellant's reply brief at bar. It is quoted: "Plaintiff having been granted a decree of divorce from defendant, which was not questioned on appeal, it was a foregone conclusion that she was entitled to and would receive a substantial alimony award. The very most that defendant could have hoped to accomplish would be to reduce the amount of the award, and hence the entire amount thereof based on her life expectancy was not in jeopardy. . . . The trial court found that defendant was worth $4,000,000. He did not contend on appeal that this finding was not supported by the evidence. It was stated in defendant's opening brief on appeal in the divorce case respecting the alimony and personal property award to plaintiff: 'We believe, after a careful review of the entire record in this case in the light of the wide discretion with which the trial court is invested in such matters, that we would subject the defendant to the claim that he is guilty of straining gnats and swallowing camels if he undertook to show that the award of $1750.00 a month for the support of his wife is excessive. We believe that the allowance, dispassionately and objectively viewed, is liberal in the extreme, if it is not excessive, but the lavish generosity of the defendant during the marriage toward his wife makes our problem of demonstrating that fact virtually insuperable. . . .' "

When appellant abandoned the attack upon the alimony orders of September 5th and September 23d, he reduced each of appeals Numbers 19730 and 19731 to a defense to an appeal from an award of $250 for attorney's services. The amount of the attorney fee included in each order rested so clearly within the discretion of the trial judge that the propriety of these modest awards cannot be gainsaid. This is true of the $500 item of October 6th as well as the earlier amounts of $250. All three awards could have been made in the sum of $500 without any abuse of discretion.

Counsel refer to a memorandum of the trial judge which was filed in connection with the order of October 6th. It is not a part of the record herein but, as both sides tacitly vouch for its verity by quoting it, we consult the memorandum and find this language: "Plaintiff maintains defendant is pursuing his present tactics for the purpose of starving her into submission. It is difficult to ascertain whether that is

his motive, or whether he is congenitally litigious, immaturely mischievous, seeking contention out of sheer boredom with his rather unproductive existence, or whether he is the victim of unsound and costly advice by his counsel.

"But it does seem demonstrably clear that defendant is bringing a continuing series of frivolous appeals that result in rendering the judicial process ineffectual. Query, is there any judicial remedy?" Again, "[b]ut none of the proposals suggested herein get to the root of the evil, and this multimillionaire defendant is able to continue posting bonds and filing new appeals, making a mockery of Court orders."

█ The judge's reasoning is not binding (*Kalmus* v. *Kalmus,* 103 Cal.App.2d 405, 421 [230 P.2d 57]), but his trenchant remarks were not misplaced. As stated in *Pope* v. *Pope, supra,* 107 Cal.App.2d 537, 540: "Where the husband possesses great wealth he has the ability to secure the services of able counsel. The allowance to the wife must give her the power to hire counsel of equal standing in order to equalize the contest, and to protect her rights."

The order should be affirmed in each of these instances and a fine imposed upon appellant's attorney for frivolous appeal.[1]

APPEAL No. 19834. TWO ATTORNEY FEES OF $1,000 EACH

On October 3, 1952, the court granted plaintiff's motion for an attorney fee to enable her to resist the appeal from the order of September 5th covering $1,750 alimony pending appeal and a $250 attorney fee. The amount fixed was $1,000. On October 10, 1952, a like motion was granted to care for the defense of the appeal from the order of September 23d and the attorney fee was fixed at $1,000. Appeals from these two orders were promptly taken and execution was stayed on each. On October 14th, the date of the appeal from the order of October 10th, counsel for appellant filed an abandonment of that portion of each of the orders of September 5th and 23d which related to alimony, thus reducing each of those appeals (Nos. 19730 and 19731) to an attack upon the $250 attorney fee. It followed that the $1,000 fee for defending each of those appeals henceforth applied only to the defense of a $250 attorney fee. So counsel for appellant, on

---

[1]Not to be outdone, plaintiff has five appeals pending in this court, taken from orders denying requests for attorney fees. Those appeals are not ready for the calendar, and the question of whether they, or any of them, possess merit is an open one.

November 28, 1952, filed an abandonment of each of the appeals from the $1,000 orders, expressly making same "without prejudice." This was done for the purpose and with the effect of revesting jurisdiction in the superior court (see Rule 19(a) of Rules on Appeal; Code Civ. Proc., § 955; *Winslow* v. *Harold G. Ferguson Corp.*, 25 Cal.2d 274, 281 [153 P.2d 714]). Defendant then moved the trial judge to vacate the two $1,000 awards upon the ground that subsequent events had disclosed that the attorney's services would no longer be necessary. The motion was denied. Thereupon, within the statutory 60-day period and on December 1, 1952, defendant appealed again from said orders of October 3d and October 10th, the $1,000 orders. (That appeal is No. 19834, now before us.)

No appeal was taken from the order denying the motion to vacate but that is of no moment. It is immaterial whether that order was appealable, as respondent's counsel urges (see 3 Cal.Jur.2d, § 57, p. 491). ▉ A ruling upon a motion does not become res judicata unless there has been a full hearing upon the merits, as in *Lake* v. *Bonynge,* 161 Cal. 120, 129 [118 P. 535] (see 15 Cal.Jur., § 177, p. 112), and we do not have that situation here.

This appeal, Number 19834, assails the validity of two orders made to cover future services on appeal which are claimed to be now excessive in view of subsequent happenings rendering the major portion of the contemplated services unnecessary. ▉ In other words, an allowance of $1,000 for the defense of an appeal from a $250 attorney fee order is claimed by appellant to be excessive. We agree.

▉ In *Warner* v. *Warner, supra,* 34 Cal.2d 838, 841, the court said, as to the power of the trial court in such circumstances: "The possibility that contingencies might occur that would make the anticipated services unnecessary does not preclude the court from making the allowance in the first instance. After a pendente lite award has been made, the trial court retains jurisdiction to modify the award at any time during the pendency of the action when a change of circumstances occurs that alters the extent of the services required. . . . Should any of the contingencies occur that would preclude rendition of the anticipated services, the trial court could reduce the award to an amount necessary to compensate the attorney for services actually rendered." That like power resides in the appellate court we do not doubt. It was exercised in *Bancroft* v. *Bancroft, supra,* 9 Cal.App.2d

464, 472. It there appeared that an order for $1,750 attorney fees upon appeal had been made in advance and that the necessary services proved to be actually worth much less, and the court modified the order by reducing the fee from $1,750 to $750 and affirmed the order as so modified. In *Nelson* v. *Nelson, supra,* 96 Cal.App.2d 210, 212, it appeared that an advance award for costs upon appeal had proved to be excessive and this court reversed the order with directions to the lower court to modify the same by reducing the amount to the actual expense incurred. Similar treatment was accorded the order of the trial court in *Barker* v. *Barker,* 139 Cal.App.2d 206 [235 P.2d 85]. In that instance the matter was remanded to the trial court with instructions to rehear the petition for attorney's fees on appeal and to grant such fees, if any, as it might find the attorneys for appellant entitled to have.

At bar there is no dispute about the factual situation and further multiplication of proceedings in this case should be avoided. This appears to be a proper instance in which the court should make an order putting an end to the particular appeal. We find that the sum of $250 is adequate compensation for the defense of an appeal from a $250 attorney fee award. In fixing this amount we have taken into consideration the work done by plaintiff's attorney before the abandonment of the attack upon the alimony item. Each of the $1,000 orders will be reduced accordingly.

By way of summary, our rulings are:

Appeal Number 19732, the order of September 23, 1952, awarding an attorney fee of $10,000, is affirmed;

Appeal Number 19730, order of September 5, 1952, for payment of $250 attorney fee, is affirmed, and attorney for appellant is fined the sum of $100 for frivolous appeal, said amount to be added to respondent's costs on appeal;

Appeal Number 19731, order of September 23, 1952, for payment of $250 attorney fee is affirmed. Attorney for appellant is fined the sum of $100 for frivolous appeal, said amount to be added to respondent's costs on appeal.

Appeal Number 19733, order of October 6, 1952, for payment of $500 attorney fee, is affirmed. Attorney for appellant is fined the sum of $100 for frivolous appeal, said amount to be added to respondent's costs on appeal.

Appeal Number 19834, order of October 3, 1952, for payment of $1,000 attorney fee, is modified by reducing the sum of $1,000 to $250, and as thus modified the order is affirmed.

Appeal Number 19834, order of October 10, 1952, for payment of $1,000 attorney fee, is modified by reducing the sum of $1,000 to $250, and as thus modified the order is affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied May 25, 1956, and appellant's petition for a hearing by the Supreme Court was denied June 27, 1956.